DONALDSON, Judge.
An officer of a corporation may elect to become exempt from coverage under the Alabama Workers’ Compensation Act (“the Act”), § 25-5-1 et seq., Ala.Code 1975, specifically pursuant to § 25-5-50(b), Ala.Code 1975. This appeal presents the question whether a corporate officer who has properly signed and filed a written certification of his or her election to be exempt from coverage under the Act (“the certification of exemption”), as required by § 25-5-50(b), must re-sign and refile a certification of exemption annually in order to remain exempt in succeeding years or whether a certification of exemption continues to be effective until it is revoked by the corporate officer pursuant to the statute. After applying the rules of statutory construction, we conclude that a certificate of exemption from coverage under § 25-5-50(b) remains in effect until it is revoked. Accordingly, the corporate officer in this case, Ernest Lee Hooks, Jr., was exempt from coverage under the Act at the time of his work-related injury, and, therefore, we affirm the judgment of the Baldwin Circuit Court (“the trial court”) entered in favor of his employer, Coastal Stone Works, Inc. (“Coastal”).

Facts and Procedural History

Both parties agree that the material facts are undisputed. Hooks became employed as president of Coastal in 2005. On May 24, 2006, Hooks, along with two other officers of Coastal, signed a certificate of exemption, “electfing] to be exempt from coverage under the Alabama Workers’ Compensation Act, Article 3, Section 25-5-50[, Ala.Code 1975].” The certificate of exemption was filed with the Alabama Department of Labor[1] (“ADOL”), and Coast *594 al’s workers’ compensation insurer received it on May 31, 2006. From June 1, 2006, forward, Hooks was excluded from coverage under Coastal’s workers’ compensation insurance policy.
On November 23, 2011, Hooks was injured in an automobile accident while performing work on behalf of Coastal. Hooks demanded compensation and benefits under the Act from Coastal. Coastal denied that Hooks was entitled to any compensation or benefits under the Act based on the May 24, 2006, certification of exemption. On August 23, 2012, Hooks filed a complaint against Coastal in the trial court, seeking compensation and benefits under the Act. Coastal answered the complaint by asserting, among other defenses, that Hooks had exempted himself from coverage under the Act by signing and filing the May 24, 2006, certification of exemption. Coastal also asserted that Hooks had failed to give Coastal sufficient notice of the November 23, 2011, accident and resulting injury as required by § 25-5-78, Ala.Code 1975.[2] The evidence is undisputed that Hooks did not sign or file any documents regarding his coverage status under the Act other than the May 24, 2006, certification of exemption, that Hooks never considered himself to be covered under the Act before the November 2011 accident, and that Hooks was never covered under Coastal’s workers’ compensation insurance policy.
In December 2012, Coastal filed a motion for a summary judgment asserting that Hooks was exempt from coverage under the Act based on the May 24, 2006, certification of exemption filed with ADOL and Coastal’s workers’ compensation insurer. The trial court denied that motion on May 1, 2013. The trial judge who entered the May 1 order denying the motion for a summary judgment recused himself from the case, and a second trial judge appointed to the case also recused himself. A third trial judge was then assigned to the case.
On September 21, 2013, Coastal filed a second motion for a summary judgment, again arguing, among other things, that Hooks was exempt from coverage under the Act.[3] On October 28, 2013, the trial *595 court entered a summary judgment for Coastal, stating in part:
“Section 25-5-50, Code of Alabama, when read in total, establishes a method by which an officer of a company may annually affirmatively request exemption. The section also sets out a method for the officer to affirmatively withdraw that exemption. When read together, the statute appears to set out a method to exempt and a method to withdraw. Therefore, the Court finds that this places the requirement on the officer that once he seeks exemption, he must then later affirmatively opt back in or the exemption remains automatically for another year.
“The Court finds that there is no genuine issue as to any material fact and [Coastal] is entitled to a judgment as a matter of law on this issue.”
Hooks filed a timely notice of appeal to this court on October 81, 2018. On appeal, Hooks contends that relief premised on Coastal’s second motion for a summary judgment is barred by the law-of-the-case doctrine and that he should be entitled to coverage under the Act because § 25-5-50 required him to renew his certification of exemption each year.

Standard of Review

Both parties concede on appeal that there are no disputed issues of material fact. “It is well established that this Court reviews a summary judgment de novo.... Moreover, ‘[w]here the facts are not in dispute and we are presented with a pure question of law, as here, this Court’s review is de novo.’ ” Ex parte Hoover, Inc., 956 So.2d 1149, 1152-53 (Ala.2006) (quoting Christian v. Murray, 915 So.2d 23, 25 (Ala.2005)).

Analysis

I. Law of the Case

Hooks argues that the trial court’s denial of Coastal’s first summary-judgment motion became the “law of the case” and precluded the entry of a judgment in favor of Coastal premised on its second summary-judgment motion, in which the same arguments were asserted.
“ ‘ “ ‘Under the doctrine of the “law of the case,” whatever is once established between the same parties in the same case continues to be the law of that case, whether or not correct on general principles, so long as the facts on which the decision was predicated continue to be the facts of the case.’ Blumberg v. Touche Ross & Co., 514 So.2d 922, 924 (Ala.1987). See also Titan Indem. Co. v. Riley, 679 So.2d 701 (Ala.1996).” ’ ”
Poole v. Prince, 61 So.3d 258, 273 (Ala.2010) (quoting Bagley ex rel. Bagley v. Creeksid'e Motors, Inc., 913 So.2d 441, 445 (Ala.2005), quoting in turn Southern United Fire Ins. Co. v. Burma, 792 So,2d 1092, 1094 (Ala.2001)) (emphasis added).
In Alabama, the denial of a motion for a summary judgment does not become the law of the case regarding the issues raised in the motion:
“There can be no res judicata effect on the denial of summary judgment since, for res judicata to apply, there must have been a final judgment rendered on the merits of the case. Reliance Ins. Co. v. Substation Products Corp., 404 So.2d 598 (Ala.1981); Wheeler v. First Alabama Bank of Birmingham, 364 So.2d 1190 (Ala.1978). Denial of a *596 motion for summary judgment is not a final judgment.
“We recognize that, in some jurisdictions, denial of a motion for summary judgment becomes the law of the case, and bars rehearing of a subsequent motion for summary judgment unless new grounds are asserted or new proof offered.' See, e.g., Federal Deposit Ins. Corp. v. Park Lane Realty Associates, 72 A.D.2d 788, 421 N.Y.S.2d 611 (1979); Fraser v. Doing, 130 F.2d 617 (D.C.Cir.1942). We are of the opinion, however, that Illinois provides the better rule; a court may reconsider its ruling on a motion for summary judgment and may correct an erroneous ruling at any time before final judgment. Roach v. Village of Winnetka, 366 Ill. 578, 10 N.E.2d 356 (1937).
“... The number of times a subsequent motion for summary judgment will be allowed rests within the sound discretion of the judge before whom the case is to be tried.”
Food Serv. Distribs., Inc. v. Barber, 429 So.2d 1025, 1027 (Ala.1983). Therefore, the trial court was not precluded by the doctrine of the law of the case from granting Coastal’s successive motion for a summary judgment, even when the successive motion asserted the same grounds for summary judgment as the previous motion.

II. Application of § 25-5-50, Ala.Code 1975

Hooks contends that his May 24, 2006, certification of exemption had expired and was no longer effective at the time of his November 23, 2011, work-related injury because he had not renewed the certification of exemption annually. Section 25-5-50(b) provides:
“[A]n officer of a corporation may elect annually to be exempt from coverage by filing written certification of the election with the department and the employer’s insurance carrier.
“At the end of any calendar year, a corporate officer who has been exempted, by proper certification from coverage, may revoke the exemption and thereby accept coverage by filing written certification of his or her election to be covered with the department and the employer’s insurance carrier.
“The certification for exemption or reinstatement of coverage shall become effective on the first day of the calendar month following the filing of the certification of exemption or reinstatement of coverage with the department.
“If the corporate officer elects to be exempt from coverage, the election shall not relieve the employer from continuing coverage for all other eligible employees who may have been covered prior to the election or who may subsequently be employed by the firm.”
§ 25-5-50(b). Hooks contends that the term “annually” in the first sentence of § 25-5-50(b) requires a corporate officer to file the required certification of exemption each year in order to be exempt from coverage under the Act. Hooks argues that, in the event that the certification of exemption is not renewed or refiled annually, the certification of exemption expires after one year, the corporate officer’s coverage under the Act is automatically reinstated, and the employer becomes responsible for providing compensation and benefits under the Act for a work-related injury occurring after the expiration of the certification of exemption. Coastal contends that a corporate officer who elects to sign and file the certification of exemption remains exempt from coverage under the Act unless or until the officer takes action to revoke the certification of exemption. *597 Coastal argues that the second sentence of § 25-5-50(b) provides the only method for an officer to revoke a certification of exemption.
We must determine if the language of § 25 — 5—50(b) is ambiguous. If it is not, then “[p]rinciples of statutory construction instruct [a court] to interpret the plain language of a statute to mean exactly what it says and to engage in judicial construction only if the language in the statute is ambiguous.” Ex parte Pratt, 815 So.2d 582, 585 (Ala.2001) (citing Ex parte Alabama Great Southern R.R. & Norfolk Southern Ry., 788 So.2d 886, 889 (Ala.2000), quoting in turn Blue Cross & Blue Shield v. Nielsen, 714 So.2d 293, 296 (Ala.1998)).
“We have said that a statute is ambiguous when it is of doubtful meaning. Ex parte Alabama Public Service Commission, 268 Ala. 322, 106 So.2d 158 (1959). Ambiguity in this sense has been defined as whether ‘A statute or portion thereof is ambiguous when it is capable of being understood by reasonably well-informed persons in either of two or more senses_’ State ex rel. Neelen v. Lucas, 24 Wis.2d 262, 267, 128 N.W.2d 425, 428 (1964).”
S & S Distrib. Co. v. Town of New Hope, 334 So.2d 905, 907 (Ala.1976).
The first sentence of § 25-5-50(b) could be interpreted, as argued by Hooks, to mean that a corporate officer must file a certification of exemption each year in order to maintain the exemption. Presumably, this interpretation would mean that the certification of exemption would expire after one year from the date the certification of exemption was filed with ADOL and the employer’s workers’ compensation insurance carrier. Conversely, the statute as a whole could be interpreted, as argued by Coastal, to mean that a corporate officer may not opt in and out of coverage under the Act more than once each year and that a certification of exemption remains in effect unless the certification of exemption is revoked using the method provided in the second sentence of § 25-5-50(b). Because the statute is susceptible to more than one meaning, we determine that it- is ambiguous, and, therefore, we must ascertain the meaning of the statute.
The principles of statutory construction are summarized in State Farm Mutual Automobile Insurance Co. v. Motley, 909 So.2d 806 (Ala.2005):
“ ‘... [T]he rule is well recognized that in- the construction of a statute, the legislative intent is to be determined from a consideration of the whole act with reference to the subject matter to which it applies and the particular topic under which the language in question is found. The intent so deduced from the whole will prevail over that of a particular part considered separately.’
“Blair v. Greene, 246 Ala. 28, 30, 18 So.2d 688, 689 (1944).
“ ‘It is well settled that when it is interpreting a statute this Court seeks to give effect to the intent of the Legislature, as determined primarily from the language of the statute itself. Beavers v. County of Walker, 645 So.2d 1365, 1376 (Ala.1994) (citing [McCall v.] McCall, 596 So.2d 2 (Ala.Civ.App.l99[l])); Volkswagen of America, Inc. v. Dillard, 579 So.2d 1301 (Ala.1991). Also, our rules of statutory construction direct us to look at the statute as a whole to determine the meaning of certain language that is, when viewed in isolation, susceptible to multiple reasonable interpretations. McRae v. Security Pac. Hous. Servs., Inc., 628 So.2d 429 (Ala.1993).’
“Ex parte Alfa Fin. Corp., 762 So.2d 850, 853 (Ala.1999).
*598 “ ‘ “When interpreting a statute, [a court] must read the statute as a whole because statutory language depends on context; [a court] will presume that the Legislature knew the meaning of words it used when it enacted the statute.” ’
“Ex parte USX Corp., 881 So.2d 437, 442 (Ala.2003) (quoting Bean Dredging, L.L.C. v. Alabama Dep’t of Revenue, 855 So.2d 513, 517 (Ala.2003)).”
909 So.2d at 813-14.
“[I]f the statute is ambiguous or uncertain, the Court may consider conditions that might arise under the provisions of the statute and examine the results that will flow from giving the language in question one particular meaning rather than another.” Volkswagen of America, Inc. v. Dillard, 579 So.2d 1301, 1305 (Ala.1991).
The first sentence of § 25-5-50(b) provides that a corporate officer may elect annually to become exempt from coverage under the Act, while the second sentence of the statute provides that revocation of that election and reinstatement of coverage may occur “[a]t the end of any calendar year.” Both the election to become exempt and the revocation of the election are “effective on the first day of the calendar month following the filing of the certification.”
After considering the statute as a whole, we determine that the legislature intended for the second sentence of § 25-5-50(b) to establish .the only method by which a corporate officer may revoke a certification of exemption. If the certification of exemption automatically expired after one year, there would be no reason for the legislature to have included the revocation method in the second sentence. The legislature has provided that the corporate officer must take action to become exempt, and, after having elected to dó so, the officer must take action to revoke that exemption. The statute does not appear to permit inaction to trigger an exemption from coverage under the Act or to trigger reinstating coverage under the Act after a certification of exemption has been filed. Further, the argument that § 25-5-50(b) implicitly provides for reinstatement of coverage if a certification of exemption is not renewed or refiled after one year is contradicted by the third sentence of the statute, which provides that reinstatement of coverage becomes “effective on the first day of the calendar month following the filing of the ... reinstatement of coverage with the department.” Reading the provisions of the statute together, the legislature has provided definitive times for the effective date of the exemption and the effective date of reinstatement to coverage, with both events occurring only following an overt act of the corporate officer. Once a certification of exemption has been filed, inaction by the corporate officer is not a permitted method under the statute to change the officer’s status.
Thus, a full reading of the statute leads to the conclusion that a certification of exemption filed by an officer of a corporation under § 25-5-50(b) continues to be effective with the same employer unless, at the end of any calendar year, the officer revokes the certification of exemption by filing a written certification of his election to accept coverage with ADOL and with the employer’s workers’ compensation insurance carrier. This interpretation of the statute provides clarity in determining whether the corporate officer is covered under the Act. In this case, Hooks’s election to become exempt from coverage became effective on June 1, 2006, the first day of the calendar month following the filing of his certification of exemption. Because Hooks never took action to revoke his certification of exemption at the end of any calendar year before his work-related *599 injury in 2011, Hooks remained exempt from coverage under the Act pursuant to § 25-5-50(b). Thus, the judgment in favor of Coastal is affirmed.
AFFIRMED.
THOMPSON, P.J., and PITTMAN, THOMAS, and MOORE, JJ., concur.

. Pursuant to Act No. 2012-496, Ala. Acts 2012, codified at § 25-2-1.1, Ala.Code 1975, and effective October 1, 2012, the Alabama Department of Industrial Relations merged *594 with the Alabama Department of Labor and the new department was named the "Alabama Department of Labor." Although Hooks filed this action prior to the effective date of Act No. 2012-496 and although the trial court record, in some places, refers to the Alabama Department of Industrial Relations, to maintain consistency in this opinion, we refer to the department as the Alabama Department of Labor. We also note that § 25-2-1.1(b) states that "whenever any act, section of the Code of Alabama 1975, or any other provision of law refers to the Department of Industrial Relations ... it shall be deemed a reference to the Department of Labor ... created by Act 2012-496.”

. Neither party argues that the trial court’s judgment should be affirmed or reversed on appeal based on the issue of notice. Our holding in this case does not require that issue to be addressed.

. In addition to materials submitted in support of its first motion for a summary judgment, Coastal submitted an affidavit from Joseph Ammons, an attorney employed by ADOL. In his affidavit testimony, Ammons provided his opinion regarding the meaning and effect of § 25-5-50, the manner in which ADOL had implemented the statute, and the methods ADOL uses to handle certifications of exemption that are filed under the statute. Hooks filed a motion to strike Ammons’s affidavit, and the trial court granted that motion. On appeal, Coastal relies on Ammons’s affidavit in support of its argument • that Hooks's 2006 certification of exemption remained in effect at the time of the injury. In his brief on appeal, Hooks likewise addresses the substance of Ammons’s affidavit testimony; however, Hooks also states that the affidavit was "correctly stricken by the trial court” on the basis that it contained impermissible expert testimony and that this court, thus, should not consider the affidavit. Coastal makes no con *595 tention on appeal that the trial court erred in ruling to strike Ammons's affidavit. We will construe Hooks’s arguments in his brief as a motion requesting that this court strike the references to Ammons’s affidavit testimony on appeal, and we grant that motion. Ammons's affidavit has not been considered by this court in resolving this appeal.